UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PANDI WHITLOCK,**

        **Plaintiff,**

-vs-                                  **Case No. 6:05-cv-908-Orl-KRS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument on the Complaint filed by Pandi Whitlock, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 9, 10. Pursuant to the consent of the parties, this matter has been referred to me for disposition under 28 U.S.C. § 636(c). Doc. Nos. 12, 13.

**I.     PROCEDURAL HISTORY.**

In April 2001, Whitlock applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq.*, (sometimes referred to herein as the Act). R. 60-62, 548-59. The applications alleged that Whitlock became disabled on October 6, 2000.

R. 60, 548. Whitlock's applications were denied initially and upon reconsideration.

Whitlock requested a hearing before an administrative law judge (ALJ). R. 52. An ALJ held a hearing on June 9, 2003. Whitlock, represented by an attorney, testified at the hearing. R. 716-39.[1]

After considering the testimony and the medical evidence presented, the ALJ determined that Whitlock was insured under OASDI through June 26, 2003, the date of the ALJ's decision. R. 19. The ALJ found that Whitlock had not engaged in substantial gainful activity since the alleged onset date of her disability. R. 28.

The ALJ concluded that the medical evidence showed that Whitlock had degenerative disc disease of the cervical spine with radiculopathy and that she had had shoulder surgery, which were severe impairments. The ALJ concluded that Whitlock's mental impairments were not severe. The ALJ further found that these impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings). R. 25.

The ALJ found that Whitlock had the residual functional capacity (RFC) to do the following:

> stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday[,] and lift ten pounds. [She] would have occasional limitations in climbing, balancing, stooping, kneeling, crouching and crawling. [She] would have occasional limitations in overhead reaching with her right extremity and she would need to avoid hazardous machinery and heights.

R. 26. The ALJ relied upon Social Security Ruling (SSR) 96-9p, entitled Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less

---

[1] Pages 740 through 742 of the transcript are not in the record before the Court. The omitted pages are not necessary to support the decision reached herein.

Than a Full Range of Sedentary Work, to conclude that, despite her limitations, Whitlock could perform "substantially all of the requirements of unskilled sedentary work . . . ." R. 28.[2]

In reaching this conclusion, the ALJ found Whitlock's testimony about the limitations arising from her impairments, including pain and depression, was not totally credible. R. 26. In reaching this conclusion, the ALJ relied on the medical records and Whitlock's reports of her activities of daily living. *Id.*

Because Whitlock's past relevant work in sales required prolonged standing and walking, the ALJ found that Whitlock could not perform that work. R. 27. The ALJ concluded based on SSR 96-9p that Whitlock's functional limitations did not erode the occupational base of unskilled sedentary work. Accordingly, the ALJ relied exclusively on the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt P, App. 2, to conclude that work was available in the national economy that Whitlock could perform. R. 28. Therefore, the ALJ concluded that Whitlock was not disabled. *Id*.

Whitlock requested review of the ALJ's decision. R. 11. In support of her request for review, she submitted medial records of treatment she received after the ALJ rendered his decision. R. 9-10, 560-715. On February 5, 2005, the Appeals Council issued a decision indicating that it had reviewed the new evidence but found that it did not provide a basis for changing the ALJ's decision. R. 6-8. The Commissioner admitted in her answer to the complaint, that Whitlock's complaint was timely filed.

---

[2]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) (OASDI), 416.967(a) (SSI).

Doc. No. 9.

## II.   JURISDICTION.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Whitlock's request for review.  *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. §§ 404.981, 416.1481.  Therefore, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.   SUMMARY OF THE FACTS.[3]

Whitlock was born on July 17, 1960.  R. 719.  She graduated from high school and enlisted in the Coast Guard.  R. 720.

Whitlock was injured when she was involved in a motor vehicle collision on August 24, 1980.  R. 720.  The VA awarded her a service-connected disability rating of 10%, which was later apparently increased to 30%, arising from migraine headaches. R. 209, 423.

After leaving military service, Whitlock worked as a receptionist and in retail sales.  R. 721-22.

In April 2000, Whitlock temporarily lost consciousness.  She had other similar episodes in 2001.  R. 110-11, 219, 305-09, 486-87.  The diagnosis was a seizure disorder.  R. 110-11, 219.

The medical records reflect that Whitlock complained of left shoulder pain, back pain, neck pain, left finger numbness, muscles spasms and anxiety beginning at least by 2000.  R. 115-20, 129-30, 339.  An MRI taken in October 2000 revealed marked

---

[3]   Because resolution of this case turns on a legal error, I provide only a brief summary of the facts.

narrowing of the disc space at C5-C6 with significant spondylosis of the cervical spine, R. 338, and an x-ray of the cervical spine showed moderate C5/C6 cervical degenerative disc disease, R. 107.  The impression of Gregory M. Lower, D.O., was cervical degenerative disc disease with left upper extremity radiculopathy, as well as bursitis of the left shoulder.  R. 105-08.

Whitlock had cervical discectomy and fusion surgery on May 31, 2001.  R. 84-130. After the surgery, she still had some pain and numbness.  She also complained of new pain in her right arm with decreased sensation and limited range of motion.  R. 248.  Additionally, she experienced migraine headaches.  R. 147-50, 376, 382, 533-34.

In October 2001, Whitlock fractured her right shoulder when she fell during a seizure.  R. 201-02.  Kenneth Hawthorne, M.D., determined that the pain Whitlock experienced as the shoulder fracture healed was due to possible internal derangement of the shoulder.  R. 477-78.  Surgery was performed on the shoulder in May 2002.  R. 490-91.  Thereafter, Whitlock still complained of right shoulder pain.  R. 474, 480-84, 546.  Upon examination, Dr. Hawthorne observed pain on range of motion and mild crepitans with moderate range of motion.  Dr. Hawthorne opined that Whitlock had a 10% whole body impairment as a result of the shoulder impairment.  R. 546.

Documents submitted to the Appeals Council revealed that on August 2, 2003, Whitlock was found unconscious with a broken left humerus.  Whitlock admitted that she had been sniffing gasoline before the incident, and a urine test revealed that she had been using marijuana, although Whitlock denied marijuana use.  R. 584, 587.  She was admitted for treatment under the Baker Act.  R. 587.  Surgery was performed to repair the broken bone.  R. 592-94, 599-600.

Medical records also reflect that Whitlock suffered from depression. R. 147-50, 211, 506-13. Michael West, Psy.D., a psychologist who examined Whitlock in August 2001, diagnosed a mood disorder (depressed) due to general medical condition (pain). R. 147-50. In August 2003, John Caliendo, M.D., diagnosed Whitlock as suffering from an adjustment disorder with mixed features. R. 580.

Whitlock took a variety of pain medication, muscle relaxants, and antidepressants. R. 724-25. She was not always compliant with use of her seizure medication, but she attributed the problem to financial considerations. R. 579. She also acknowledged occasional misuse of her prescription medicine. *Id.*; *see also* R. 527.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the  economy?

20 C.F.R. § 404.1520(a)(4); 416.920(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g., McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987) (per curiam).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.   ANALYSIS.

Whitlock asserts that the ALJ erred in the following respects: (1) by failing to give her VA disability rating any consideration; (2) by failing to call a vocational expert to determine whether there was work she could perform in light of her functional limitations; and (3) by improperly concluding that her testimony about her impairments was not fully credible. Whitlock also contends that the Appeals Council erred by failing to remand the case for consideration of the new medical records submitted after the ALJ's decision was rendered. These are the only issues I will address.[4]

As discussed above, the ALJ found that Whitlock had functional limitations that precluded her from performing the full range of sedentary work. Nevertheless, the ALJ relied upon the Grids at step five of the sequential evaluation process to determine that Whitlock was not disabled. This is an incorrect application of the law as established in this circuit.

In *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004), the United States Court of Appeals held that "'[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills. . . . If *either* condition exists, the ALJ [is] required to consult a vocational expert.'" *Id.* at 1242 (quoting *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985) (emphasis

---

[4] The parties were advised that issues not specifically raised would be waived. Doc. No. 11.

added) which in turn cited *Broz v. Schweiker,* 677 F.2d 1351, 1361 (11th Cir.1982), *adhered to sub nom. Broz v. Heckler,* 711 F.2d 957 (11th Cir.1983)).  The Court also noted other cases in the Eleventh Circuit reaching the same conclusion.  *Id.* (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999); *Wolfe v. Chater,* 86 F.3d 1072, 1077 (11th Cir.1996); *Martin v. R.R. Ret. Bd.,* 935 F.2d 230, 234 (11th Cir.1991); *Walker v. Bowen,* 826 F.2d 996, 1002-03 (11th Cir.1987); *Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985)).

The Commissioner did not cite the *Phillips* decision in her memorandum.  Rather, she relied upon *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992), as support for the ALJ's decision to rely upon the Grids despite finding that Whitlock could not perform a full range of sedentary work.   In *Passopulos*, the Court considered whether use of the Grids would be permitted at step five of the sequential evaluation process when an ALJ concluded that the claimant's nonexertional limitations did not significantly affect his RFC such that it prevented the claimant from performing a full range of light work.  *Id.* at 648.  It is, therefore, inapposite in the present case because the ALJ found that Whitlock's impairments *did* significantly limit her basic work skills and preclude her from performing the full range of work at her given exertional level.[5]

Accordingly, remand is required to permit the Commissioner to obtain the services of a vocational expert to determine whether Whitlock can perform work available in the national economy.  On remand, the Commissioner must also specifically consider Whitlock's VA disability rating in assessing Whitlock's functional

---

[5]   It is also significant that the *Phillips* court considered the *Passopulos* opinion and found that it was not inconsistent with the established law in the circuit.  357 F.3d at 1243 n.14.

capacity.  *See Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981).[6]  Of course, the Commissioner should also consider the record as a whole, including the medical evidence submitted to the Appeals Council, in determining Whitlock's functional capacity.

**VI.    CONCLUSION.**

For the reasons set forth herein, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings.  The Clerk of Court is directed to issue a judgment consistent with this Order and, thereafter, to close the file.

DONE and ORDERED this 19th day of September, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[6]    It would be helpful if Whitlock would supplement the record on remand with the actual VA disability rating decisions.